## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

KLEIBER ALEXANDER
ARIAS GUDINO,

                Petitioner

    v.

CRAIG LOWE, et al.,

            Respondents.

CIVIL ACTION NO. 1:25-CV-00571

(MEHALCHICK, J.)

## MEMORANDUM

Petitioner, Kleiber Alexander Arias Gudino ("Arias Gudino"), a Venezuelan national with temporary protected status, brings this petition for a writ of habeas corpus, seeking release from detention pending immigration proceedings, and alleging that his detention is unlawful and in violation of his substantive and procedural due process rights. Arias Gudino has been detained by immigration authorities since March 14, 2025, first for an alleged violation of an order of supervision, and then because his temporary protected status was withdrawn. In addition to the petition, Arias Gudino moves for a temporary restraining order and preliminary injunction. The parties agree that the issue before this Court is whether Arias Gudino's detention is justified and lawful.

I.    THE SHIFTING IMMIGRATION LAW LANDSCAPE

The legal landscape surrounding Venezuelan nationals and holders of temporary protected status is complex and rapidly evolving and is important background to the matter presently before this Court. Temporary Protected Status ("TPS") is a designation by the Department of Homeland Security ("DHS") of countries "experiencing an ongoing armed

conflict, environmental disaster, or extraordinary and temporary conditions." *Saget v. Trump,* 375 F. Supp. 3d 280, 297 (E.D.N.Y. 2019) (citing 8 U.S.C. § 1254a). Venezuela received TPS designation by the United States in early 2021. *See* Designation of Venezuela for Temporary Protected Status and Implementation of Employment Authorization for Venezuelans Covered by Deferred Enforced Departure, 86 Fed. Reg. 13574, 13575 (Mar. 9, 2021). That designation had been renewed twice, most recently in January 2025. *See* Extension of the 2023 Designation of Venezuela for Temporary Protected Status, 90 Fed. Reg. 5961 (Jan. 17, 2025).

On January 28, 2025, Respondent Noem attempted to unilaterally end the TPS designation for Venezuela. *See* Vacatur of 2025 Temporary Protected Status Decision for Venezuela, 90 Fed. Reg. 8805 (Feb. 3, 2025). On March 31, 2025, the Northern District of California granted a motion for preliminary relief, postponing the effective date of the vacatur and ruling that the vacatur was unlawful. *Nat'l TPS All. v. Noem,* 2025 WL 957677, at *22 (N.D. Cal. Mar. 31, 2025) (on appeal). The court reasoned that a putative strip of Venezuelans' TPS was not only unlawful under the Administrative Procedure Act and the Constitution's Equal Protection Clause, but also that such a change would have a great detrimental effect on the livelihoods and physical and mental wellbeing of Venezuelans living in the United States. *Nat'l TPS All.,* 2025 WL 957677, at *22-45. The court explained, "it is not clear where TPS holders stripped of their legal status in the United States can go," "because there is no Venezuelan consulate in the United States where to update or get passports[. . . ]And even if there were such an option, the prospect of rebuilding in a new place – finding a job, health care, basic necessities – is no easy task." *Nat'l TPS All.,* 2025 WL

957677, at *21 (internal citations omitted). The court further emphasized the uncertainty that Venezuelans with TPS currently face under Respondent's Noem's vacatur, stating:

> "Although the TPS designations for Venezuela are only temporary, they still afford TPS holders with concrete, meaningful relief: for a fixed period of time, TPS holders have both the right to work and the right to be free from removal, which give not only stability but also security in their lives and time with their families otherwise threatened by Secretary Noem's actions. In short, time matters, even if that time is limited."

*Nat'l TPS All.,* 2025 WL 957677, at *23.

Further, on March 14, 2025, Proclamation No. 10903 was issued, invoking the Alien Enemies Act ("AEA"), Rev. Stat. § 4067, 50 U.S.C. § 21, declaring "that all Venezuelan citizens 14 years of age or older who are members of [Tren de Aragua], are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies." Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua, 90 Fed. Reg. 13033 (March 14, 2025). On April 7, 2025, in response to a lawsuit by five Venezuelan nationals detained in Texas and imminently facing deportation under the AEA, the Supreme Court held that individuals detained and facing removal under the AEA must receive notice and have an opportunity to be heard. *Trump v. J. G. G.*, No. 24A931, 2025 WL 1024097 (U.S. Apr. 7, 2025). Specifically, the Supreme Court required the notice "be afforded within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs." *J. G. G.*, 2025 WL 1024097, at *2. On April 17, 2025, a Northern District of Texas court denied a request for a preliminary injunction filed by two Venezuelan petitioners facing removal under the AEA, holding that they failed to show irreparable harm where the government stated it had no "present plans" to remove petitioners. *A.A.R.P. v. Trump*, No. 1:25-CV-059-H, 2025 WL 1148140, at *3 (N.D.

Tex. Apr. 17, 2025), *appeal dismissed*, No. 25-10534, 2025 WL 1148141 (5th Cir. Apr. 18, 2025). On appeal, the Supreme Court enjoined removals pursuant to the AEA until further argument can be heard. *A.A.R.P., et al. v. Trump, President of the U.S., et al.*, No. 24A1007, 2025 WL 1147238 (U.S. Apr. 19, 2025).

The Court also notes the matter of *Abrego Garcia v. Noem*, an ongoing federal case in which an individual was mistakenly deported to a prison in El Salvador and has been unable to return to the United States even after the mistake was discovered. *See Noem v. Abrego Garcia*, 604 U.S. ---; 2025 WL 1077101 (April 10, 2025); *see also Abrego Garcia v. Noem*, No. 25-1345, 2025 WL 1021113 (4th Cir. Apr. 7, 2025); *Abrego Garcia v. Noem*, No. 8:25-CV-00951-PX, 2025 WL 1014261 (D. Md. Apr. 6, 2025). After the Fourth Circuit Court of Appeals affirmed a district court order that President Trump had to work with El Salvador to bring the wrongly deported man back to the United States and remanded the case to district court, DHS respondents implied that they would be unable to return the man to the United States. *See Abrego Garcia*, 2025 WL 1021113; *see also Abrego Garcia*, 2025 WL 1014261. Acting General Counsel of DHS, Joseph N. Mazzara, stated in a sworn declaration, "DHS does not have the authority to forcibly extract an alien from the domestic custody of a foreign sovereign nation." *Abrego Garcia v. Noem*, No. 8:25-CV-00951-PX, Doc. 77. During the hearing on the matter before this Court, Respondents acknowledged that they cannot assure Arias Gudino that he will not be removed from the United States pending immigration procedures.

Against this background, the Court turns to the facts of the matter before this Court.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Arias Gudino is a Venezuelan national who was granted TPS on January 20, 2025. (Doc. 1-1). Prior to his grant of TPS, Arias Gudino was detained by United States

Immigration and Customs Enforcement ("ICE") while litigating an asylum claim and awaiting a final removal order. (Doc. 13, at 12). After a 90-day "removal period" during which he was subject to mandatory detention, "ICE released Arias Gudino pursuant to regulations that require the release of a noncitizen with a final removal order where 'there is no significant likelihood that the [noncitizen] will be removed in the reasonably foreseeable future.' 8 C.F.R. § 241.4(i)(7)." (Doc. 13, at 12). ICE subsequently issued the Order of Supervision providing the conditions of Arias Gudino's release, placed him on ICE's Intensive Supervision Appearance Program ("ISAP"), and required him to wear an ankle monitor. (Doc. 13, at 13). The Order of Supervision contains several conditions, including "not to associate with know [sic] gang members, criminal associates, or be associated with any such activity." (Doc. 17, at 15; Doc. 18-11, at 3). The Order of Supervision also directs that Arias Gudino is not to commit any crimes and that violation of the conditions of the Order may result in him being taken into custody. (Doc. 17, at 15; Doc. 18-11, at 3). Arias Gudino's ankle monitor was removed after his TPS application was approved. (Doc. 13, at 13).

On March 14, 2025, a Federal Bureau of Investigations ("FBI") Task Force effectuated a search warrant at an apartment located at 1463 St. Lawrence Avenue in the Bronx, New York. (Doc. 17, at 16; Doc. 18-12; Doc. 18-13). Respondents have alleged that the search was connected to gang-related investigations, associated with Tren de Aragua ("TdA"), a criminal organization with origins in Venezuela. (Doc. 17, at 16-17; Doc. 18-12; Doc. 18-13, at 2). Arias Gudino was present at 1463 St. Lawrence Avenue at the time the search was conducted, as he, his mother, and his one-and-a-half-year-old infant child were living in a rented room at that same address. (Doc. 17, at 16; Doc. 18-13, at 2; Doc. 19-1; Doc. 19-2). According to

sworn declarations by Arias Gudino and his mother, 1463 St. Lawrence Avenue "contained several rooms that were rented out individually on a weekly basis to different people." (Doc. 19, at 8; Doc. 19-1, ¶ 6; Doc. 19-2, ¶ 5). He and his family rented two rooms and Arias Gudino claims he did not know the people who rented the other rooms. (Doc. 19, at 8; Doc. 19-1, ¶ 6; Doc. 19-2, ¶ 5). The sworn declarations also provide that neither Arias Gudino nor his mother were aware that any inhabitants of 1463 St. Lawrence Avenue were involved with gang activity, nor were they aware that any renters were associated with gang members. (Doc. 19, at 8; Doc. 19-1, ¶ 6; Doc. 19-2, ¶ 5). The FBI contacted ICE and notified the agency of Arias Gudino's presence, and he was arrested and detained by ICE. (Doc. 17, at 17; Doc. 18-13). Arias Gudino suggests that he has been identified as being associated with TdA solely because he was present at 1463 St. Lawrence Avenue at the time of the search. (Doc. 19, at 8-9). Respondents submit that Arias Gudino was detained as he was "identified as a member of [TdA] by the FBI." (Doc. 18-13, at 4).

Following his arrest by ICE on March 14, 2025, Arias Gudino's attorney, Rebecca Schectman ("Attorney Schectman") contacted ICE to inquire as to the basis for his detention, and she was told that he was "statutorily ineligible for temporary protected status" under "relevant statutory and regulatory provisions." (Doc. 1, ¶¶ 64-66). Arias Gudino also inquired about his detention and received confirmation that he did have TPS. (Doc. 1, ¶ 67).

On March 31, 2025, Arias Gudino filed the instant habeas petition, seeking relief pursuant to 28 U.S.C. § 2241. (Doc. 1). On April 7, 2025, Arias Gudino filed a motion for a temporary restraining order and preliminary injunction, along with a brief in support, seeking immediate release from ICE detention. (Doc. 10; Doc. 13). On April 8, 2025, this Court held a telephonic status conference. During the status conference, for the first time, Respondents

advised Arias Gudino's counsel and the Court that they understood that Arias Gudino may be associated with TdA. The Court ordered expedited briefing by Respondents on the motion and scheduled oral argument and an evidentiary hearing for Tuesday, April 15, 2025. The Court also ordered Respondents not to remove Arias Gudino pending the hearing on the motion. (Doc. 15).

More than three weeks *after* he was initially detained, *after* he initiated this habeas action and moved for a preliminary injunction, and *after* the Court conducted its initial status conference and ordered briefing and an argument, on April 8 and 9, 2025, ICE notified Arias Gudino that his release was revoked due to violations of the Order of Supervision. (Doc. 17, at 17; Doc. 18-14; Doc. 18-15). On April 11, 2025, Respondents filed a brief in opposition to the motion for preliminary injunction, in which they asserted that Arias Gudino is lawfully detained on the grounds that he violated his Order of Supervision. (Doc. 17, at 6). On April 13, 2025, Arias Gudino filed a reply brief. (Doc. 19). On April 14, 2025, on the eve of the hearing on this motion, Arias Gudino received notice that his TPS had been withdrawn. (Doc. 22-1).

## III.  DISCUSSION

Arias Gudino brings his habeas petition pursuant to 28 U.S.C. § 2241, in which he alleges that his continued detention is in violation of the Constitution and laws of the United States. The habeas petition is soundly before this Court, as requests for wrongful detention in immigration contexts are properly brought in habeas and this Court has jurisdiction over immigration-related habeas petitions.[1] *See Trump v. J. G. G.*, No. 24A931, 2025 WL 1024097

---

[1] 8 U.S.C. § 1252 includes a jurisdictional bar prohibiting federal courts from reviewing orders of removal. 8 U.S.C. § 1252. This Court is not reviewing an order of removal, and as such, 8 U.S.C. § 1252 is no bar to this Court's jurisdiction.

(U.S. Apr. 7, 2025) (acknowledging that immigration-related detainees' "claims fall within the 'core' of the writ of habeas corpus") (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022) (internal quotations omitted)).

The immediate question before the Court is whether it should enjoin Arias Gudino's detention because he has demonstrated that he is wrongfully detained. (Doc. 13; Doc. 17; Doc. 19). Four factors govern a district court's decision in issuing a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. *See Grill v. Aversa*, 908 F. Supp. 2d 573, 591 (M.D. Pa. 2012); *see also Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994); *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir. 1985)); *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 170–71 (3d Cir. 2001).

A.    LIKELIHOOD OF SUCCESS ON THE MERITS

To establish a reasonable probability of success on the merits, a movant must produce sufficient evidence to satisfy the essential elements of the underlying cause of action. *Punnett v. Carter*, 621 F.2d 578, 582-83 (3d Cir. 1980). The district court must examine the legal principles controlling the claim and the potential defenses available to the opposing party. *See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 264 (3d Cir. 2000). A mere possibility that the claim might be defeated does not preclude a finding of probable success if the evidence clearly satisfies the essential prerequisites of the cause of action. *Highmark*, 276 F.3d at 173 (stating "on an application for preliminary injunction, the plaintiff need only prove a *prima facie* case, not a certainty that he or she will win"). Here, the Court must

determine whether Arias Gudino is likely to succeed on the merits of his claims that he has
been unlawfully detained for an alleged violation of his Order of Supervision, or on the basis
of the revocation of his TPS,[2] or on his claims of violations of his right to substantive and
procedural due process.[3]

### 1.    Statutory and Regulatory Framework

Consideration of the lawfulness of Arias Gudino's detention turns on the interplay of
several related statutes and regulations. The statutes and regulations, and pertinent subparts,
relevant to the Court's analysis of the parties' arguments are as follows:

- Immigration and Nationality Act ("INA") § 208(b)(2)(A), codified as 8 U.S.C. § 1158: codifies procedures for withdrawal of asylum and eligibility for asylum as part of the United States Code and regulatory scheme governing asylum

- 8 U.S.C. § 1254a – Temporary Protected Status

  - 8 U.S.C. § 1254a(a)(1)(A) – prohibiting removal of TPS holders

  - 8 U.S.C. § 1254a(d)(4) – prohibiting detention of individuals with TPS "on the basis of the alien's immigration status;" this provision is under the subsection related to documentation of TPS holders

- 8 C.F.R. § 241.4 – governing detention of noncitizens beyond removal period

  - 8 C.F.R. § 241.4(l)(1) – stating that noncitizens may be taken into "custody" in certain circumstances, including violations of release conditions

- 8 C.F.R. § 244.4 – listing two categories of aliens ineligible for TPS, including individuals who have committed certain crimes and aliens

---

[2] Respondents assert Arias Gudino has been detained since March 14, 2025 for
violating his Order of Supervision, and additionally, has been detained since April 14, 2025
because of the withdrawal of TPS.

[3] The Court need not assess whether Arias Gudino is likely to succeed on his
Administrative Procedure Act claims, as those claims may only be addressed after a final
agency action for which there is no other adequate remedy in a court. 5 U.S.C. § 704; *see also
Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 495 (6th Cir. 2014).

described as ineligible for asylum in § 208(b)(2)(A) of the Immigration and Nationality Act ("INA")

- 8 C.F.R. § 244.14 – listing procedures for TPS withdrawal and vests authority to withdraw TPS in USCIS

- 8 C.F.R. § 244.10 – describing procedures for individuals appealing TPS designation decisions and defines temporary benefits for individuals during their appeal process

Analysis of the statutory and regulatory framework outlined above is governed by basic principles of statutory interpretation, as contemplated by the Third Circuit Court of Appeals:

> As with all questions of statutory interpretation, we first turn to the statutory language "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Marshak v. Treadwell*, 240 F.3d 184, 192 (3d Cir. 2001) (citations and internal quotation marks omitted). We discern "[t]he plainness or ambiguity of statutory language ... by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (citations and internal quotation marks omitted). Where "the statutory meaning is clear, our inquiry is at an end." *Ki Se Lee v. Ashcroft*, 368 F.3d 218, 222 (3d Cir. 2004); *Marshak*, 240 F.3d at 192.

> *Gordon v. Wawa, Inc.*, 388 F.3d 78, 81 (3d Cir. 2004).

Further, when construing the validity of federal regulations against an enabling statute, a court must first look to see if the regulations are inconsistent with the unambiguously expressed intent of Congress, and where it is unambiguously inconsistent, the court must give effect to the plain language of the statute. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984), *overruled by Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024)).[4]

---

[4] The Supreme Court's decision in *Loper Bright* did not overrule the *Chevron* directive to abide by statutory language where statutes and regulations are unambiguously inconsistent. *See Chevron*, 467 U.S. 837; *Loper Bright*, 603 U.S. 369. *Loper Bright* focused primarily on overruling *Chevron's* instruction to defer to agency interpretation of statutes where there is ambiguity. *Loper Bright*, 603 U.S. 369. However, where the statute and regulation are unambiguously inconsistent, *Chevron* already required courts to defer to Congress's drafted

2.      **Temporary Protected Status**

The TPS program provides humanitarian relief to foreign nationals from specified countries. *Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). That relief comes in the form of temporary protection against removal in the face of war, natural disasters, or other extraordinary and temporary conditions. 8 U.S.C. § 1254a; *see also Osman v. Schmidt*, No. 25-CV-286, 2025 WL 870048, at *1 (E.D. Wis. Mar. 20, 2025). "[A] TPS recipient is 'considered as being in, and maintaining, lawful status as a nonimmigrant' for the purpose of becoming [a legal permanent resident]." *Sanchez,* 593 U.S. at 412 (quoting 8 U.S.C. § 1254a(f)(4)). Relevant authorities "shall not remove the [noncitizen] from the United States during the period in which [TPS] is in effect." 8 U.S.C. § 1254a(a)(1)(A). Likewise, 8 U.S.C. § 1254a(d)(4), as part of the subsection related to documentation of TPS, provides that a non-citizen with TPS "shall not be detained by the Attorney General on the basis of the [noncitizen]'s immigration status in the United States." 8 U.S.C. § 1254a(d)(4). Under this statute, courts have considered writs of habeas corpus and determined that detained petitioners with TPS cannot remain detained pending lawful immigration proceedings. *See e.g., Rojas v. Venegas*, No. 1:25-CV-00056, 2025 WL 996421, at *1 (S.D. Tex. Apr. 2, 2025) ("[t]he Court holds that Petitioner is a Venezuelan national with valid Temporary Protected Status and was wrongfully detained under 8 U.S.C. 1254a(a)(1)(A)(i).").

---

statute. *See Chevron*, 467 U.S. at 843, In effect, "*Loper Bright* instructed us to carry out our judicial duty to say what the law is, even when agencies are involved." *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 422 (6th Cir. 2024).

### 3. Detention of Arias Gudino Based on a Violation of the Order of Supervision

Arias Gudino asserts that he cannot be detained as a result of the alleged violation of the Order of Supervision because 8 U.S.C. §1254a bars detention of individuals with TPS. Respondents aver that his detention since March 14, 2025 is not due to his immigration status, but rather because he violated his Order of Supervision, and therefore 8 U.S.C. § 1254a does not apply. (Doc. 17, at 21; Doc. 18-11). The parties do not dispute that from March 14, 2025 through April 14, 2025, Arias Gudino had TPS. (Doc. 1-1; Doc. 13, at 14; Doc. 13-2, ¶ 2; Doc. 17, at 23-25). The parties also do not dispute that Arias Gudino was subject to an Order of Supervision entered on November 14, 2024. (Doc. 18-10; Doc. 18-11). Rather, Respondents assert that Arias Gudino's presence during the FBI search at 1463 St. Lawrence Avenue constituted a violation of his Order of Supervision, which prohibited association with "know [sic] gang members." (Doc. 17, at 21; Doc. 18-11, at 3; Doc. 18-12; Doc. 18-13).

The detention of certain noncitizens, including Arias Gudino as an individual subject to a final order of removal (Doc. 13, at 12), is allowed after an order of final removal has been issued if the conditions of release or the conditions of an order of supervision have been violated. *See* 8 C.F.R. § 241.4(l)(1). Arias Gudino argued at the hearing that this Court should find that any return to ICE custody necessarily is "on the basis of immigration status," which is prohibited by 8 U.S.C. § 1254a(d)(4).

The Court is tasked with interpreting statutes "'as a symmetrical and coherent regulatory scheme.'" *Argueta-Orellana v. Att'y Gen. United States*, 35 F.4th 144, 148 (3d Cir. 2022) (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995)). The Court must read 8 U.S.C. § 1254a(d)(4) and 8 C.F.R. § 241.4(l)(1) together and "'fit, if possible, all parts into an

harmonious whole.'" *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 100 (2012) (quoting *F.T.C. v. Mandel Bros.*, Inc., 359 U.S. 385, 389 (1959)). Reading the statute and regulations as a "harmonious whole," the Court finds that 8 C.F.R. § 241.4(l)(1) contains a carveout for 8 U.S.C. § 1254a(d)(4), which allows noncitizens who are subject to orders of supervision and who violate those condition to be returned to custody. This makes sense, as to construe otherwise would render the Order of Supervision pointless and without any effect at all. Further, such a construction is not in conflict with § 1254a(d)(4), as that provision is addressing the detention of an immigrant in the context of documentation of immigration status. As such, the Court finds that Arias Gudino has a low likelihood of success on the merits for his claims that his detention from March 14, 2025 through April 14, 2025 based upon an alleged Order of Supervision violation was unlawful under 8 U.S.C. § 1254a(d)(4).

### 4.    Detention of Arias Gudino Based Upon TPS Withdrawal

As previously noted, on the eve of the hearing in this matter, on April 14, 2025, Arias Gudino was notified that his TPS had been withdrawn. Respondents assert that, as Arias Gudino no longer has TPS, which was withdrawn based upon his statutory ineligibility for TPS pursuant to 8 C.F.R § 244.4. (Doc. 21-1; Doc. 22-1), his detention is lawful, as the benefit of non-detention is not enjoyed by an individual challenging a revocation of their TPS. Arias Gudino argues that pursuant to 8 U.S.C. § 1254a and 8 C.F.R § 244.14, individuals challenging their withdrawn TPS cannot be detained.

There is no dispute that TPS may be withdrawn in certain circumstances. *See* 8 C.F.R. § 244.14. Respondents assert that Arias Gudino's status was withdrawn pursuant to 8 C.F.R. § 244.14(a)(1), which states that USCIS may withdraw TPS status if "[t]he alien was not in fact eligible at the time such status was granted, or at any time thereafter becomes ineligible

for such status." 8 C.F.R. § 244.14. An "ineligible alien" is defined in Section 244.4, in pertinent part, as an alien who "is an alien described in section 208(b)(2)(A) of the [Immigration and Nationality] Act." 8 C.F.R. § 244.4(b).

Section 208(b)(2)(A) of the Immigration and Naturalization Act[5] describes certain aliens ineligible for asylum. *See* 8 U.S.C. § 1158(b)(2)(A). Section 1254a incorporates 8 U.S.C. § 1158, noting that "[a]n alien shall not be eligible for temporary protected status" if he is an alien that would have also been denied asylum for reasons articulated in 8 U.S.C. § 1158(b)(2)(A). One of those reasons is that "there are reasonable grounds for regarding the alien as a danger to the security of the United States." *See* 8 U.S.C. § 1254a(c)(2)(B)(ii); *see also* 8 U.S.C. § 1158(b)(2)(A)(iv).

Regulations found at 8 C.F.R. § 244.14(b)(3) govern the withdrawal of TPS and challenges to that withdrawal. The procedure for challenging a withdrawal of TPS depends on the basis for withdrawal. When withdrawal is based upon a determination that an individual was ineligible for TPS in the first place, the process is as follows:

> "If the basis for the withdrawal of Temporary Protected Status constitutes a ground of deportability or excludability which renders an alien ineligible for Temporary Protected Status under § 244.4 or inadmissible under § 244.3(c), the decision shall include a charging document which sets forth such ground(s) with notice of the right of a de novo determination of eligibility for Temporary Protected Status in deportation or exclusion proceedings."

> 8 C.F.R. § 244.14(b)(3)

---

[5] As noted *supra*, INA § 208(b)(2)(A)(iv) is codified as 8 U.S.C. § 1158(b)(2)(A)(iv). *See* Hillel R. Smith, Congressional Research Service, *An Overview of the Statutory Bars to Asylum: Limitations on Applying for Asylum (Part One)*, https://www.congress.gov/crs-product/LSB10815, ("Under Section 208 of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1158 [. . . ]").

The language "renders an alien ineligible for Temporary Protected Status under § 244.4" describes a determination that the individual was never eligible in the first place because § 244.4 pertains to individuals who are "ineligible for Temporary Protected Status." 8 C.F.R. § 244.4. *See* 8 C.F.R. § 244.14(b)(3); *see also* 8 C.F.R. § 244.4. Here, as stated, Respondents assert that Arias Gudino was never eligible for TPS as he is a threat to national security. While the regulation describes the individual right to a de novo determination of eligibility for TPS, the regulation is silent as to what rights or benefits a former TPS holder retains during this de novo process.

Arias Gudino argues that he maintains the benefit not to be detained under 8 C.F.R. § 244.14, which states, "[TPS] benefits will be extended during the pendency of an appeal." (Doc. 19, at 13). Under 8 U.S.C. § 1254a(d)(4), as discussed *supra*, an alien "shall not be detained [. . . ] based upon immigration status." 8 U.S.C. § 1254a(d)(4). Relying on 8 C.F.R. § 244.10(e), Respondents argue that the only benefits Arias Gudino maintains is the right to employment verification and the right not to be removed pending appeal. Under 8 C.F.R. § 244.10(e), "temporary treatment benefits" include work authorization and a stay of deportation. 8 C.F.R. § 244.10(e). The regulation does not mention non-detention as a benefit. 8 C.F.R. § 244.10(e). Further, the TPS statute, 8 U.S.C. § 1254a, describes the "benefits and status during a period of temporary protected status" and non-detention is not included. 8 U.S.C. § 1254a(f)(4). Congress only chose to mention the right to not be detained on the basis of immigration status in the subsection regarding documentation of TPS status, two subsections earlier in the statute. 8 U.S.C. § 1254a(d)(4). Congress contemplated an unnamed potential benefit, non-detention, and did not include it in not one, but two, provisions in the applicable statutory and regulatory scheme, 8 C.F.R § 244.10 and 8 U.S.C. § 1254a(f).

Congress's intent to not include non-detention as a benefit is an appropriate conclusion. *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) ("We do not read the enumeration of one case to exclude another unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it.") (citing *United Dominion Indus., Inc. v. United States*, 532 U.S. 822, 836 (2001)). Again, reading the statute as a "harmonious whole," *Roberts*, 566 U.S. at 100, the Court finds it unambiguous that drafters did not intend to define non-detention as a benefit of TPS. *See* 8 U.S.C. § 1254a(f)(4); 8 U.S.C. § 1254a(d)(4). Accordingly, Arias Gudino has not shown a likelihood of success on the merits of his claims related to his detention after his TPS was withdrawn.

### 5.    Detention of Arias Gudino in Violation of Substantive Due Process

Respondents do not directly address Arias Gudino's substantive due process claims in their briefing. (Doc. 17). According to Arias Gudino, "his detention does not bear a reasonable relation to the purposes of civil immigration detention because it is prohibited by statute," and ICE therefore knew that "his removal was not reasonably foreseeable." (Doc. 13, at 27; Doc. 19, at 15).[6]

It is "'well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.'" *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *see also Lopez v. Sessions*, No. 18 CIV. 4189 (RWS), 2018 WL 2932726, at *10 (S.D.N.Y. June 12, 2018). To show a violation of substantive due process, a plaintiff must demonstrate that his detention served no legitimate government purpose by

---

[6] Arias Gudino argues that "the agency has already concluded that [Petitioner's] detention is not justified, and nothing has changed since that time." (Doc. 13, at 27). But this is not correct, and something had changed in the intervening time – Arias Gudino's alleged violations of the conditions of his release, which authorized his detention under 8 C.F.R. § 241.4(l)(1).

demonstrating "a misuse of governmental power that shocks the conscience." *Desousa v. Garland*, No. CV 21-3961, 2022 WL 1773604, at *3 (E.D. Pa. May 31, 2022) (citing *Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir. 1994)). In the immigration context, "the Court must determine whether Plaintiffs' detention is rationally connected to a legitimate government purpose and whether it is excessive in relation to that purpose." *Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020).

"Civil detention, including immigration detention, must "'bear[] a reasonable relation to the purpose[s] for which the individual [was] committed.'" *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). As articulated by Arias Gudino, "the Supreme Court has explained in *Zadvydas v. Davis*, [that] the purpose of civil immigration detention for an individual who has been ordered removed is to mitigate flight risk and danger to the community during the limited period when the government seeks to execute their deportation." (Doc. 13, at 27); *Zadvydas*, 533 U.S. at 690. When a non-citizen's removal is not reasonably foreseeable, detention serves no legitimate government purpose, and thus the noncitizen must be released. *Zadvydas*, 533 U.S. at 700-01.

Arias Gudino is being detained because he violated his Order of Supervision. The Court must address if immigration detention based upon such a violation serves a legitimate governmental purpose. *Zadvydas*, 533 U.S. at 690. Here, the immigration regulatory scheme explicitly authorizes detention based upon a violation of a supervision order, as explained *supra*. *See* 8 C.F.R. § 241.4(l)(1) ("[a]ny alien … who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody."). Accordingly, the Court finds that his detention, which is based upon a violation of his Order of Supervision meant to prohibit gang association and related

17

community dangers, is tied to a legitimate government purpose of community protection. *See Malam*, 469 F. Supp. 3d at 790 (finding a legitimate government interest in detaining noncitizens "where a detainee would pose a danger, to "'protect[ ] the community.'") (quoting *Zadvydas*, 533 U.S. at 690) (citing *Demore v. Kim*, 538 U.S. 510, 523 (2003)).

Additionally, Arias Gudino argues his detention violates substantive due process requirements because his detention has been excessive in relation to the government interest, as his removal is not reasonably foreseeable. (Doc. 13, at 28). In *Zadvydas*, the Supreme Court held that when removal is not "reasonably foreseeable," detention becomes unconstitutional after six months. *Zadvydas*, 533 U.S. at 690 (holding that executive agencies may not hold noncitizens longer than six-months when removal is not foreseeable and stating "[a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing"). Courts have denied habeas relief when petitioners have not been in custody for six months. *See Alvarez v. U.S. Dep't of Homeland Sec.*, No. CIV.A. 06-3320 (MLC), 2006 WL 2385119, at *5 (D.N.J. Aug. 17, 2006) (denying habeas relief based upon substantive due process violations when a petitioner had not been detained for six months and stating "[o]nly if DHS continues to detain Petitioner beyond the six-month period determined to be presumptively reasonable [. . . ] in *Zadvydas*, will Petitioner's habeas claim mature."); *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir.2002) ("to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"). Arias Gudino has not shown that his detention is unrelated to a legitimate government purpose, and he has not yet

been detained beyond the six-month limit determined to be presumptively reasonable in *Zadvydas*; as such he is unlikely to succeed on his substantive due process claims.[7]

### 6.    Detention of Arias Gudino in Violation of Procedural Due Process

Arias Gudino asserts that the Respondents had an obligation under procedural due process protections to provide notice and an opportunity to be heard before depriving him of his protected liberty interest. (Doc. 13, at 30-31). According to Arias Gudino, at the time of his detention, the Respondents "refused to provide notice of the reason for his detention and [. . .] failed to provide him any procedure by which he could meaningfully challenge it." (Doc. 13, at 30-31). Arias Gudino also asserts that the violation of his procedural due process rights "relates back to the time that he was taken into custody and cannot be cured by any *post hoc* rationalization." (Doc. 13, at 32). Respondents argue that Arias Gudino did receive proper notice of his revocation of release on April 8 and April 9, 2025, when "ICE served Arias Gudino with notices regarding the revocation of his release and the reasons for the revocation." (Doc. 17, at 22). Further, the Respondents state that Arias Gudino was scheduled to have an informal interview with ICE, however, it was moved to accommodate his attorney. (Doc. 17, at 22). On April 14, 2025, Arias Gudino also received notice of his TPS status being withdrawn. (Doc. 22-1).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment [. . .] The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."

---

[7] Arias Gudino's alleged Order of Supervision violation continues to justify his detention, even after his withdrawn TPS. Therefore, the Court need not consider whether he shows a likelihood of success on substantive due process claims related to his withdrawn TPS.

*Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *see also Gayle v. Johnson*, 81 F. Supp. 3d 371, 382 (D.N.J. 2015), *vacated and remanded sub nom. Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 838 F.3d 297 (3d Cir. 2016) (abrogated on other grounds). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "The due process afforded [non-citizens] stems from those statutory rights granted by Congress and the principle that minimum due process rights attach to statutory rights." *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir.2003); *see also Gayle*, 81 F. Supp. 3d at 382. It so follows that non-citizen "detainees have a right to notice and an opportunity to be heard 'appropriate to the nature of the case.'" *J. G. G.*, 2025 WL 1024097, at *2 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). "[E]ven in circumstances where mandatory detention is constitutionally permissible, due process still requires 'adequate procedural protections' to ensure that the Government's stated justification for detaining [a non-citizen] without a bond hearing 'outweighs the individually constitutionally protected interest in avoiding physical restraint.'" *Gayle*, 81 F. Supp. 3d at 382 (quoting *Zadvydas*, 533 U.S. at 690).

When determining the extent of process that is due and whether an individual was deprived of that process, courts consider three factors:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

> *Mathews*, 424 U.S. at 335.

To access the constitutionality of non-criminal detention, including in the immigration context, the Court assesses and weighs each of these factors to determine if an individual was

afforded the appropriate level of procedural due process. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529-533 (2004) (applying the *Mathews* test to find that "citizen-detainee seeking to challenge his classification as an enemy combatant must receive notice of the factual basis for his classification, and a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker"); *see also Black v. Decker*, 103 F.4th 133, 147 (2d Cir. 2024) (stating "[m]any courts have applied the *Mathews* factors. . . to determine what process is due to noncitizens in removal proceedings"); *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 364 (S.D.N.Y. 2019) (applying the *Mathews* test to determine that an individual detained by ICE received constitutionally inadequate procedural due process).

To assess whether Arias Gudino received adequate due process under the *Mathews* test, the Court will walk through each of the factors and weigh them against each other. The Court first looks to "the private interest that will be affected by the official action." *Mathews*, 424 U.S. at 335. Arias Gudino is detained and as such, "his private interest in personal liberty was of the highest interest one can have, weighing the first prong clearly in his favor." *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 364 (S.D.N.Y. 2019) (finding that an immigrant detained by ICE had "the highest [private] interest one can have"); *see also Hamdi*, 542 U.S. at 529 (stating freedom from physical detention "is the most elemental of liberty interests"); *see also Zadvydas*, 533 U.S. at 690 (finding that freedom from government custody lies at the heart of due process protections).

Next, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used." *Mathews*, 424 U.S. at 335. In immigration cases, courts consider whether agencies have abided by regulatory process requirements and whether a detainee has received notice to determine the risk of erroneous deprivation. *Martinez*, 385

F.Supp. at 364 (finding an "extremely high" risk of erroneous deprivation where the agency failed to provide timely notice); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022) (finding a low risk of erroneous deprivation when an agency abided by the notice and hearing requirements of the regulatory scheme at play). According to Respondents, ICE followed necessary regulations defining procedure for detention because Arias Gudino was provided notice of revocation of the Order of Supervision on April 8 and April 9, and was scheduled for an informal interview with ICE until it had to be rescheduled to accommodate his attorney. (Doc. 17, at 22). Arias Gudino was also provided notice of his TPS status being revoked. (Doc. 22-1). These facts do not alleviate the Court's concerns of a risk of erroneous deprivation.

Arias Gudino was detained on March 14, 2025. (Doc. 1, at 2). The Southern District of New York held that where an immigrant is only given a rationalization for their detention well after they were detained by ICE, the "risk of erroneous deprivation. . . [is] extremely high" because petitioner now must challenge their deprivation "within prison, where his access to his belongings, the courts, and to counsel is severely limited." *Martinez*, 385 F. Supp. 3d at 364. Respondents' examples of notice all occurred **nearly a month** after the Arias Gudino was detained. (Doc. 1, at 2; Doc. 17, at 22). These notices are also dated **after** the April 8th status conference with this Court, where Respondents alleged, for the first time, that Arias Gudino was a suspected member of TdA. (Doc. 1, at 2; Doc. 17, at 22). The Court again notes that there has recently been at least one notable instance where an individual was wrongly detained by ICE and removed to El Salvador. *Abrego Garcia*, 2025 WL 1077101, at *1. Accordingly, the Court finds that the second *Matthews* factor weighs in favor of Arias Gudino, as there is a significant risk of erroneous deprivation of Arias Gudino's rights where

"Petitioner [is] not given the time and ability to strategize how to contest [their detention]."

*Martinez*, 385 F. Supp. 3d 349, at 364.

Finally, the Court considers "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. This factor does not weigh strongly in favor of Respondents, as the regulations cited by Respondents themselves contemplate more prompt notice than was afforded here. Respondents rely on 8 C.F.R. § 241.4, which states: "[u]pon revocation [of release], the alien will be notified of the reasons for revocation of his or her release or parole." 8 C.F.R. § 241.4. Arias Gudino was not provided notice upon revocation of release; he was given notice nearly a month after he was initially detained. (Doc. 17, at 22). Government interests are not harmed by requiring the government to follow its own regulations.[8] *See Marshall v. Lansing*, 839 F.2d 933, 943 (3d Cir. 1988) (stating "principles

---

[8] Respondents contended at the hearing that there was a new justification for Arias Gudino's detention beginning on March 14, 2025, when his TPS status was revoked. The regulation cited by Respondents states that the government must give notice "upon revocation [of release]." 8 C.F.R. § 241.4. The government cannot avoid this requirement by through a *post hoc* additional justification for a revocation, and then give a detainee notice of its *post hoc* justification after initially failing to give notice and detaining them. *See Martinez*, 385 F. Supp. 3d at 365 (granting release based upon a writ of habeas corpus to an alien who was unlawfully detained due to due process violations initially, even when the basis for detention was converted into a potentially lawful one during the period of detention and stating "the [c]ourt finds that [p]etitioner's application for *habeas corpus*, which was filed while he was unlawfully detained, is an appropriate basis for the [c]ourt to scrutinize his entire detention. This is particularly so where—as here—the detention appears to be one continuous event derived from one underlying set of facts."); *see also Marshall*, 839 F.2d at 943 (stating "[a] court must review the agency's actual on-the-record reasoning process. Only a formal statement of reasons from the agency can provide this explanation, not a post hoc rationalization, or agency counsel's in-court reasoning"). Preventing the government from presenting *post hoc* justifications for detention on the eve of a hearing does not create a substantial burden on the government because "the Government [has] little to lose by providing Petitioner with advanced written notice on completed forms and offering a meaningful opportunity for him to search his papers, solicit counsel, and contest detention". *Martinez*, 385 F. Supp. 3d at 364.

of due process require an agency to follow its own regulations"). Respondents are also not significantly harmed by requiring them to provide an individual "a meaningful opportunity for him to search his papers, solicit counsel, and contest detention." *Martinez*, 385 F. Supp. 3d at 364. Accordingly, the government interest factor in the *Mathews* test does not weigh in favor of Respondents. Considering the above, the Court finds the relevant factors weigh in favor of the Arias Gudino, and he is, therefore, likely to succeed on the merits of his procedural due process claim.

      B.    RISK OF IRREPARABLE HARM

Having addressed the Arias Gudino's likelihood of success on the merits, the Court turns next to irreparable harm. At the outset, the Court notes the "flexible" approach endorsed by the Court of Appeals for the Third Circuit. *Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017), *as amended* (June 26, 2017). This approach requires courts to consider the factors "taken together," such that a plaintiff who shows great harm has leeway to show less success on the merits, or a plaintiff who shows less harm must show a high likelihood of success on the merits to warrant a preliminary injunction. *Reilly*, 858 F.3d 173; *Word Seed Church v. Vill. of Hazel Crest*, 533 F. Supp. 3d 637, 647 (N.D. Ill. 2021) ("the [c]ourt applies a 'sliding scale' approach under which 'the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor plaintiff's position'") (quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)). Generally, irreparable harm must be harm that cannot be remedied by a legal or equitable remedy following trial, and must be actual and imminent, and not speculative or remote. *See Angstadt ex rel. Angstadt v. Midd-West Sch.*, 182 F. Supp. 2d 435, 437 (M.D. Pa. 2002); *see also Dice v. Clinicorp, Inc.*, 887 F. Supp. 803, 809 (W.D. Pa. 1995).

In the immigration context, unlawful detention is a sufficient irreparable injury. *See Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017) (finding that immigration detention can constitute irreparable harm "by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time" and emphasizing harm related to economic burdens due to missed work and the harm that results when children cannot see their detained parents). Further, threatened removal satisfies the irreparable injury requirement, including injuries such as separation from family and homes, uncertainty about legal status, and difficulties with building a new life, such as healthcare and employment. *See Nat'l TPS All.*, 2025 WL 957677, at *21 ("Removal presents significant hardship for several reasons [. . . including. . .] separation from family, friends, and communities.") (citing *Washington v. Trump*, 847 F.3d 1151, 1168-69 (9th Cir. 2017)); *see also Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018) (holding that loss of liberty due to detention is "perhaps the best example of irreparable harm"); *Carmona v. Bondi*, No. CV-25-00110-TUC-JGZ, 2025 WL 786514, at *3 (D. Ariz. Mar. 12, 2025) (holding that a detainee who is facing potential removal has shown irreparable injury). Further, separation from family members while potentially being wrongly detained constitutes irreparable injury. *E.O.H.C. v. Barr*, 434 F. Supp. 3d 321, 340 (E.D. Pa. 2020), *order vacated, appeal dismissed sub nom. E.O.H.C. v. Att'y Gen. United States*, No. 20-1163, 2020 WL 2111302 (3d Cir. Apr. 20, 2020)[9] ("Courts have recognized that separation from family members constitutes an irreparable injury.") (citing *Ragbir v. U.S.*, No. 17-cv-1256, 2018 WL 1446407, at *18 (D.N.J. March 23, 2018)) (citing *U.S. v. Diana*, Crim No. 83-cv-301, 1988 WL 17011, at *2 (E.D. Pa. Feb. 25, 1988)).

---

[9] The Court of Appeals decision was based upon petitioners' release from detention rendering the matter moot, not based upon error of law. *E.O.H.C.*, 2020 WL 2111302.

Arias Gudino demonstrates the risk of irreparable harm, as he has experienced and will continue to experience harm in the context of his family obligations and his ability to support himself and his family financially, should this Court not order his release. (Doc. 13-2, ¶¶ 2, 6). Respondents argument that he "has administrative means by which to challenge the revocation of his release on supervision" (Doc. 17, at 32) is unavailing, as that administrative process does not reduce or remove the harm Arias Gudino will suffer. As such, the Court finds that Arias Gudino has established irreparable harm here.

C.    REMAINING PRELIMINARY INJUNCTION FACTORS

The Court now looks to the remaining factors of a preliminary injunction request. *Reilly,* 858 F.3d 173. "[I]f a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421*, 1427 n.8 (3d Cir. 1994). In looking at these remaining factors, the Court must consider Arias Gudino's argument that there is a public interest in ensuring that the government respect the fundamental due process principle that no one should be subject to unlawful detention against Respondent's argument that the grant of the motion for preliminary injunction would frustrate their ability to effectively administer immigration laws would be frustrated. Absent legitimate, countervailing concerns, public interest favors the protection of constitutional rights, and any comparison of harm to the Government turns mostly on matters of public interest, as those considerations merge when the Government is an opposing party. *See Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 332 (3d Cir. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Recently, the United States District Court for the Northern District of California considered the balance of hardships between detained TPS holders facing detention and release and the Government claiming national security risks associated with said release. *See Nat'l TPS All.*, 2025 WL 957677, at *27. That court concluded that the Government's assertion of national security harms was "not convincing" and found uncompelling the Government's assertion that detention is in the public interest due to national security concerns, economic impact, and public safety. *Nat'l TPS All. v. Noem*, No. 25-CV-01766-EMC, 2025 WL 957677, at *24-27 (N.D. Cal. Mar. 31, 2025). In *Abrego Garcia*, the District of Maryland found the public interest factor to weigh in favor of issuing a preliminary injunction ordering the release of a noncitizen, despite similar potential concerns with border security or public safety because the public interest is served by assuring government institutions follow the law. 2025 WL 1014261, at *11 ("'Of course there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm.' [. . .]Equally important, the public remains acutely interested in 'seeing its governmental institutions follow the law....'") (internal citation omitted) (quoting *Nken*, 556 U.S. at 436) (quoting *Roe v. Dep't of Def.*, 947 F.3d at 230–31 (4th Cir. 2020) (internal quotation marks and citation omitted)).

According to Arias Gudino, "[t]he public has an interest in ensuring that the government respect the fundamental due process principle that no one can be subject to unlawful detention and that no one can be deprived of their liberty without notice and an opportunity to be heard." (Doc. 13, at 38). Respondents submit, "a denial of [Petitioner's] petition would serve the public interest, as it would confirm the statutory framework set forth by Congress and ensure the removal proceedings are not fragmented." (Doc. 17, at 33-34).

Considering the parties' arguments, the Court is compelled by Arias Gudino's arguments and finds that the public interest and balancing of equities in this case favors issuing preliminary relief, as it is in the public's interest that individuals subject to immigration proceedings be afforded sound process and not be subjected to unlawful detention.

## IV.    CONCLUSION

Pursuant to the foregoing, Petitioner's motion for a preliminary injunction (Doc. 10) is **GRANTED**.[10]

An appropriate Order follows.

Dated: April 21, 2025                                    *s/ Karoline Mehalchick*

                                                    **KAROLINE MEHALCHICK**
                                                    **United States District Judge**

_____

[10] Because the Court has **GRANTED** Petitioner's preliminary injunction request, it will **DENY** his motion for temporary restraining order request as **MOOT**. (Doc. 10).