UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KLEIBER ALEXANDER ARIAS GUDINO, Petitioner | CIVIL ACTION NO. 1:25-CV-00571 |
| v. | (MEHALCHICK, J.) |
| CRAIG LOWE, et al., Respondents. | |

**MEMORANDUM**

Before the Court is Petitioner Kleiber Alexander Arias Gudino's ("Gudino") emergency motion to reopen and enforce the Court's February 25, 2026 order and to enjoin transfer and/or removal. (Doc. 42). Gudino requests that the Court reopen this matter and enforce its February 25, 2026 order affirming Gudino's release from civil immigration detention. (Doc. 42, at 1). For the following reasons, Gudino's motion will be **DENIED**. (Doc. 42).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Gudino is a Venezuelan national whom the Department of Homeland Security ("DHS") granted temporary protected status ("TPS") on January 20, 2025. (Doc. 1-1). Prior to his grant of TPS, the United States Immigration and Customs Enforcement ("ICE") detained Gudino while he was litigating an asylum claim and awaiting a final removal order. (Doc. 13, at 12). After a 90-day "removal period" during which he was subject to mandatory detention, "ICE released [Gudino] pursuant to regulations that require the release of a noncitizen with a final removal order where 'there is no significant likelihood that the [noncitizen] will be removed in the reasonably foreseeable future.'" (Doc. 13, at 12) (quoting

8 C.F.R. § 241.4(i)(7)). ICE subsequently issued an order of supervision providing the conditions of Gudino's release, placed Gudino on ICE's Intensive Supervision Appearance Program ("ISAP"), and required Gudino to wear an ankle monitor. (Doc. 13, at 13). DHS removed Gudino's ankle monitor after it granted him TPS. (Doc. 13, at 13).

On March 14, 2025, a Federal Bureau of Investigations ("FBI") Task Force effectuated a search warrant at an apartment located at 1463 St. Lawrence Avenue in the Bronx, New York. (Doc. 17, at 16; Doc. 18-12; Doc. 18-13). Respondents alleged that the search was connected to gang-related investigations, associated with Tren de Aragua ("TdA"), a criminal organization with origins in Venezuela. (Doc. 17, at 16-17; Doc. 18-12; Doc. 18-13, at 2). Gudino was present at 1463 St. Lawrence Avenue at the time the FBI conducted the search, as he, his mother, and his one-and-a-half-year-old infant child were living in a rented room at that same address. (Doc. 17, at 16; Doc. 18-13, at 2; Doc. 19-1; Doc. 19-2). The FBI contacted ICE and notified the agency of Gudino's presence, and ICE arrested and detained him. (Doc. 17, at 17; Doc. 18-13).

On March 31, 2025, Gudino filed a petition for writ of habeas corpus, seeking relief pursuant to 28 U.S.C. § 2241. (Doc. 1). On April 7, 2025, Gudino filed a motion for a temporary restraining order and preliminary injunction, along with a brief in support, seeking immediate release from ICE detention. (Doc. 10; Doc. 13). The Court held a hearing on Gudino's motion on April 15, 2025, and on April 14, 2025, on the eve of the hearing, Gudino received notice that his TPS had been withdrawn. (Doc. 22-1). The Court granted Gudino's motion for a preliminary injunction on April 21, 2025, and ICE released Gudino from custody on April 22, 2025. (Doc. 29; Doc. 46, at 3). ICE outfitted Gudino with an ankle monitor and required Gudino to check in with ICE at regular intervals. (Doc. 46, at 2).

On or about, July 11, 2025, Gudino's ankle monitor indicated that it may have been tampered with, and DHS's alternatives to detention representatives were unsuccessful in contacting Gudino. (Doc. 46, at 4). After July 14, 2025, Gudino's ankle monitor was no longer responsive, and ICE lost contact with Gudino for over a year. (Doc. 46, at 4). On November 11, 2025, the Administrative Appeals Office ("AAO") of the United States Citizenship and Immigration Services ("USCIS") dismissed Gudino's appeal of the withdrawal of his TPS, which resulted in the immediate withdrawal of his TPS. (Doc. 46, at 4). On February 25, 2026, the undersigned granted Gudino's underlying habeas petition, finding that the government violated Gudino's procedural due process rights by detaining him without providing adequate notice of the basis of his detention. (Doc. 46, at 5). The Court directed the government to respect Gudino's procedural due process rights "by providing him 'with advanced written notice on completed form and [offer him] a meaningful opportunity for him to search his papers, solicit counsel, and contest detention,'" should the government re-detain him. (Doc. 40, at 25-26) (quoting *Martinez v. McAleenan*, 385 F. Supp. 3d, 364 (S.D.N.Y. 2019)).

On August 28, 2026, ICE conducted an enforcement action for a separate individual in Corona, New York. (Doc. 46, at 5). During the enforcement action, ICE officers observed Gudino enter a vehicle registered to his name. (Doc. 46, at 5). Gudino submits that he was sitting at a bus stop in Queens, New York, waiting for his mother and girlfriend, who were at an appointment across the street. (Doc. 42-1, at 32). The officers obtained a warrant for removal and approached the vehicle.[1] (Doc. 46, at 5). Gudino submits that the ICE officers

[1] The Court notes that Gudino contends that ICE did not obtain the appropriate I-205 warrant for his arrest. (Doc. 49, at 4-5). However, the record indicates that ICE Enforcement and Removal Operations executed a form I-205 Warrant of Removal/Deportation in addition

grabbed him by the arms, threw him to the ground, forced him into handcuffs, tased, and pepper sprayed him. (Doc. 42-1, at 6). The government provides that Gudino resisted and attempted to evade arrest, resulting in injuries to the ICE officers. (Doc. 46, at 6).

The ICE officers then transported Gudino to the ICE New York office, where Gudino was detained for one day before ICE transferred him to the Moshannon Valley Processing Center. (Doc. 46, at 6). On August 30, 2026, DHS served Gudino with a Notice of Revocation of Release. (Doc. 46, at 6). The notice indicated that Gudino's release had been revoked pursuant to 8 C.F.R. § 241.4.(1) for absconding his alterative to detention conditions on or about July 14, 2025. (Doc. 46, at 6). The notice also indicated that ICE is seeking a travel document to effectuate Gudino's removal to Venezuela. (Doc. 46, at 7). Gudino provides that the paperwork he received was in English, which he could not understand. (Doc. 42-1, at 5). On September 1, 2026, pursuant to 8 C.F.R. § 241.4(1) and 8 C.F.R. § 241.13(i), a deportation officer provided Gudino with an informal interview regarding the revocation of his release, in which Gudino was provided an opportunity to respond to the reasons for the revocation. (Doc. 46, at 7).

On September 11, 2026, DHS transferred Gudino from the Moshannon Valley Processing Center to the Miami Correctional Facility in Bunker Hill, Indiana. (Doc. 46, at 7). Later that day, Gudino filed an emergency motion to reopen and enforce the Court's February 25, 2026 order granting his habeas petition and a brief in support. (Doc. 42; Doc. 42-1). On September 15, 2026, the government filed a brief in opposition. (Doc. 46). On September 17,

to a form I-200 Warrant for Arrest of Alien for Gudino. (Doc. 46, at 6 n.5; Doc. 46-4, at 3-4, 7).

2026, Gudino filed a reply in support of his emergency motion to reopen. (Doc. 49). Accordingly, the motion is ripe and ready for disposition.

## II. Legal Standards

28 U.S.C.A. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C.A. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While habeas relief typically involves release from custody, Courts may order alternative relief such as prohibitions on removal in immigration related habeas cases. *See J. G. G.*, 604 U.S. at 673 (finding that a noncitizen detained by ICE may challenge removal in a habeas petition). While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). If the Court determines that the government unlawfully detained a petitioner, the Court may order "his immediate release from custody." *Martinez*, 385 F. Supp. 3d at 372.

## III. Discussion

Gudino moves to reopen this matter because he avers that the government failed to provide advanced written notice of the basis of his detention when ICE arrested him on August 28, 2026. (Doc. 42-1, at 6). Gudino contends that to date, the government has failed to provide any meaningful notice to him, in a language he understands, or to his attorneys of the basis for his re-detention. (Doc. 42-1, at 6). The government counters that DHS did not violate the Court's February 25, 2026 order because Gudino absconded from supervision and after encountering Gudino in a separate enforcement action, DHS provided Gudino with the due process required by regulation. (Doc. 46, at 9). The government also provides that DHS is detaining Gudino not only because he violated the conditions of his supervision, but also because Gudino has a final order of removal and his removal is reasonably foreseeable. (Doc. 46, at 9). Gudino disputes that his removal is reasonably foreseeable. (Doc. 49, at 8).

The Court will first determine whether DHS complied with federal regulations in revoking Gudino's supervisory release and re-detaining him. The Court will then determine whether DHS violated Gudino's procedural due process rights and the Court's February 25, 2026 order by re-detaining him. Finally, the Court will determine whether there is significant likelihood of Gudino's removal in the reasonably foreseeable, warranting detention under 8 U.S.C. § 1231.

### A. DHS Complied With 8 C.F.R. § 241.4(l)(1) When Revoking Gudino's Supervisory Release.

Gudino contends that the government failed to meet the due process requirements outlined by the Court and due to him under the Constitution and the Immigration and Nationality Act's ("INA") implementing regulations. (Doc. 42-1, at 6). The government counters that DHS is authorized to revoke bond for noncitizens subject to a final order of

removal, who violate the conditions of their supervisory release. (Doc. 46, at 11). The government avers that in revoking Gudino's bond, it complied with the necessary due process procedures as outlined in 8 C.F.R. § 241.4(l)(1). (Doc. 46, at 11-13).

Under federal regulations, after ICE issues a noncitizen a final order of removal, ICE "may release [the noncitizen] under an order of supervision under § 241.4 if it determines that the [noncitizen] would not pose a danger to the public or a risk of flight, without regard to the likelihood of the [noncitizen]'s removal in the reasonably foreseeable future." 8 C.F.R. § 241.13. However, the order of supervision may have conditions of release and any noncitizen "released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody." 8 C.F.R. § 241.4 (l)(1); *see also* *Roe v. Oddo*, No. 3:25-CV-128, 2025 WL 1892445, at *4 (W.D. Pa. July 9, 2025) (stating "[r]evocation of release is governed by Section 241.4(l). Revocation of release may occur for two reasons: (i) the [noncitizen] violates the conditions of release, or (ii) ICE determines in its discretion to revoke release"). If the government revokes supervisory release, the noncitizen will be notified of the reasons for the revocation, and they will be afforded an initial informal interview promptly after their return to custody. 8 C.F.R. § 241.4(l)(1); *Dudamel v. Jamison*, No. 26-361, 2026 WL 498612, at *5 (E.D. Pa. Feb. 23, 2026); *Reyes v. Jamison*, No. 26-1324, 2026 WL 970231, at *3-*4 (E.D. Pa. April 9, 2026) ("ICE complied with the requirements of 8 C.F.R. § 241.4(l)(1) by providing Petitioner with prompt notice and an informal interview upon revocation of his [order of supervision]). During the interview, the noncitizen has an opportunity to respond to the reasons for revocation stated in the notice. 8 C.F.R. § 241.4(l)(1).

Gudino, a noncitizen subject to a final order of removal, violated the conditions of his supervised release by absconding for over a year. (Doc. 46, at 12). As such, DHS was authorized to revoke Gudino's supervisory release and re-detain him pursuant to 8 C.F.R. § 241.4(l)(1). On August 30, 2026, two days after Gudino's re-detention, DHS served Gudino with a notice of revocation of release, indicating that Gudino's release was revoked due to a violation of the conditions of his release. (Doc. 46, at 13). Then, on September 1, 2026, DHS provided Gudino with an informal interview pursuant to 8 C.F.R. § 241.4(l)(1), in which Gudino was given an opportunity to respond to the reason for his revocation. (Doc. 46, at 13). Accordingly, the government complied with federal regulations by providing Gudino with notice and an informational interview upon revocation of his order of supervision. 8 C.F.R. § 241.4(l)(1); *see Reyes*, 2026 WL 970231, at *3-*4; *see Dudamel*, 2026 WL 498612, at *5.

B. DHS PROVIDED GUDINO WITH ADEQUATE PROCEDURAL DUE PROCESS WHEN RE-DETAINING HIM.

Gudino contends that the government violated the Court's February 25, 2026 order and Gudino's procedural due process rights when it re-detained him without advanced written notice of the basis of his detention. (Doc. 42-1, at 6). The government counters it provided Gudino with all the necessary procedural due process required by federal regulations and the Court. (Doc. 46, at 13).

When determining the extent of process that is due and whether an individual was deprived of that process, courts consider three factors:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the

> fiscal and administrative burdens that the additional or substitute procedural requirement would entail."
>
> *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

To determine the constitutionality of non-criminal detention, including immigration detention, courts assess and weigh each of these factors to determine if an individual was afforded the appropriate level of procedural due process. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529-533 (2004) (applying the *Mathews* test to find that "citizen-detainee seeking to challenge his classification as an enemy combatant must receive notice of the factual basis for his classification, and a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker"); *see also Black v. Decker*, 103 F.4th 133, 147 (2d Cir. 2024) (stating "[m]any courts have applied the *Mathews* factors ... to determine what process is due to noncitizens in removal proceedings"); *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 364 (S.D.N.Y. 2019) (applying the *Mathews* test to determine that an individual detained by ICE received constitutionally inadequate procedural due process). The Court will address each *Mathews* factor in turn.

The first *Mathews* factor is "the private interest that will be affected by the official action." *Mathews*, 424 U.S. at 335. As this Court previously determined, freedom from detention is the highest personal liberty interest a person can have. (Doc. 28, at 21); *see Martinez*, 385 F. Supp. 3d at 364 (finding that an immigrant detained by ICE had "the highest [private] interest one can have"); *see also Hamdi*, 542 U.S. at 529 (stating freedom from physical detention "is the most elemental of liberty interests"); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (finding that freedom from government custody lies at the heart of due process protections). Thus, this factor weighs in favor of providing Gudino with additional procedural due process.

The second *Mathews* factor is "the risk of an erroneous deprivation of such interest through the procedures used." 424 U.S. at 335. In immigration cases, courts consider whether agencies have abided by regulatory process requirements and whether a detainee has received notice to determine the risk of erroneous deprivation. *Martinez*, 385 F.Supp. 3d at 364 (finding an "extremely high" risk of erroneous deprivation where the agency failed to provide timely notice); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022) (finding a low risk of erroneous deprivation when an agency abided by the notice and hearing requirements of the regulatory scheme at play). Unlike Gudino's previous re-detention, where DHS did not notify Gudino of the reason for his detention until nearly a month after he was detained, here, the government complied with 8 C.F.R. § 214.4(l) by providing Gudino with notice of revocation within two days of re-detention and a prompt interview with an opportunity to respond to the reason for revocation. (Doc. 46, at 13). Accordingly, the Court finds that with notice of revocation and a prompt interview, DHS provided Gudino with the time and ability to determine how to contest his detention, and the second *Mathews* factor, risk of erroneous deprivation, weights in favor of the government. *See Rodriguez Diaz*, 53 F.4th at 1213.

The final *Mathews* factor is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. The government's primary purpose in detaining removable noncitizens, like Gudino, is to prevent them from fleeing, "increasing the chance that, if ordered removed, the [noncitizens] will be successfully removed." *Demore v. Kim*, 538 U.S. 510, 528 (2003). As Gudino absconded from the conditions of his supervised release, his re-detention serves the government interest of preventing flight to effectuate removal. *See Demore*, 538 U.S. at 528. As discussed *supra* Section III.A., in revoking release

and re-detaining Gudino, the government complied with the provisions of 8 C.F.R. § 241.4(l)(1). The government could not have reasonably provided Gudino with any more advanced notice of the revocation of his supervised release because Gudino absconded from the conditions of his order of supervision, and ICE officers incidentally located him during a separate targeted enforcement action. (Doc. 46, at 10). However, upon revocation and transfer to the Moshannon Valley Processing Center, the government provided Gudino with the written notice and prompt interview required by 8 C.F.R. § 241.4(l)(1). Therefore, the Court finds that requiring the government to provide Gudino with procedural safeguards beyond those outlined in the federal regulations would constitute an administrative burden. *See Marshall v. Lansing*, 839 F.2d 933, 943 (3d Cir. 1988) (stating "principles of due process require an agency to follow its own regulations"); *see Koita v. Jamison*, No. 26-4401, 2026 WL 2168721, at *7 (E.D. Pa. July 28, 2026) (finding the government's compliance with its regulations in revoking petitioner's supervised release constituted adequate procedural due process); *see Dudamel*, 2026 WL 498612, at *5 ("the burden on the Government to comport with its own regulations . . . is nowhere near so weighty as to outweigh the concomitant suppression of Petitioner's liberty"); *see also Roe*, 2025 WL 1892445, at *8 (finding petitioner's procedural due process violation to be unsubstantiated because the government complied with 8 U.S.C. § 1231 and 8 C.F.R. § 241.4, satisfying the requirements of procedural due process).

While the Court previously found that the government violated Gudino's procedural due process rights when it provided notice of revocation twenty-six days after re-detention, here, the government complied with federal regulations by providing Gudino with written notice of the reason for revocation within two days of his arrest and a prompt interview, in which Gudino had an opportunity to respond to the reasons for his detention. (Doc. 40; Doc.

46, at 9-13). While an opportunity to locate papers, solicit counsel, and contest revocation of release before re-detention may have been advantageous to Gudino, the government was not reasonably able to provide notice any earlier because Gudino absconded from his order of supervision. (Doc. 46, at 10). Therefore, the final *Mathews* factor, burdens that the additional or substitute procedural requirement would entail, weighs in favor of the government. *See Marshall*, 839 F.2d at 943; *see Koita*, 2026 WL 2168721, at *7; *see Dudamel*, 2026 WL 498612, at *5; *see Roe*, 2025 WL 1892445, at *8. Taken together, the Court finds that the government provided Gudino with adequate procedural due process in revoking his release and re-detaining him. *See Mathews*, 424 U.S. at 335.

C. THERE IS A SIGNIFICANT LIKELIHOOD OF GUDINO'S REMOVAL IN THE REASONABLY FORESEEABLE FUTURE.

Finally, the government avers that Gudino's detention is also justified under 8 U.S.C. § 1231 because Gudino's removal to Venezuela is reasonably foreseeable. (Doc. 46, at 15). The government provides that since the AAO of the USCIS denied Gudino's appeal of the withdrawal of his TPS, there is no further impediment to effectuating Gudino's removal. (Doc. 46, at 15). Gudino counters that the government only offers evidence that removal is feasible, not imminent. (Doc. 49, at 7). Gudino avers that the date of his removal is uncertain. (Doc. 49, at 7).

Section 1231 of the INA provides for the detention of noncitizens with final orders of removal. 8 U.S.C. § 1231. Pursuant to 8 U.S.C. § 1231, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Noncitizens convicted of certain criminal offenses and noncitizens whom the Attorney General finds to be a risk to the community or unlikely to comply with an order of removal may be detained beyond the 90-day removal period. 8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001), the Supreme Court found that indefinite detention of a noncitizen with a final order of removal violates the Due Process Clause of the Fifth Amendment, and that detention of a noncitizen with a final order of removal must be limited with a definite endpoint. The Supreme Court determined that to discern whether post-order of removal detention comports with the Due Process Clause of the Fifth Amendment, habeas courts must ask whether the detention "exceeds a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. The Supreme Court found that detention post-order of removal is presumptively reasonable for a period under six months. *Zadvydas*, 533 U.S. at 701. After the presumptively reasonable six month period runs and the detained noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. As the period of confinement grows, what counts as reasonably foreseeable future conversely shrinks. *Zadvydas*, 533 U.S. at 701. If removal is ultimately not reasonably foreseeable, habeas courts should hold continued detention unreasonable. *Zadvydas*, 533 U.S. at 699-700.

Neither the Supreme Court nor the Third Circuit have definitively ruled on whether nonconsecutive detention periods may be aggregated. *Lam v. Noem*, No. 3:25-CV-00397, 2026 WL 492383 at * 5 (W.D. Pa. February 23, 2026). However, if the detention periods were not cumulative, "the government could otherwise detain aliens indefinitely by continuously releasing and re-detaining them." *Abuelhawa v. Noem*, 811 F. Supp. 3d 847, at 855-56 (S.D. Tex. 2025) (collecting multiple cases in which courts across the country have held that prior detentions count towards the six-month period under *Zadvydas*). To allow the presumptively

reasonable detention period to restart after every re-detainment could seriously undercut the holding of *Zadvydas*. *Abuelhawa*, 811 F. Supp. 3d at 855-56 (collecting cases).

While it is unclear from the record whether Gudino has cumulatively been detained for six months under 8 U.S.C. § 1231, the government has shown that there is a significant likelihood of Gudino's removal in the reasonably foreseeable future. With the withdrawal of Gudino's TPS, the only remaining barrier to Gudino's removal is awaiting an open seat on a removal flight to Venezuela. (Doc. 46, at 15; Doc. 46-8, at 3). Nevertheless, as the period of confinement grows, what counts as reasonably foreseeable future conversely shrinks. *Zadvydas*, 533 U.S. at 701. Should Gudino's detention become prolonged to a point in which his removal is no longer reasonably foreseeable, Gudino may reopen this matter.

## IV. Conclusion

For the foregoing reasons, Gudino's motion to reopen and enforce the Court's February 25, 2026 order and to enjoin transfer/or removal (Doc. 42) is **DENIED without prejudice** to Gudino reopening the matter should his detention become prolonged to a point in which his removal is no longer reasonably foreseeable. The Clerk of Court is directed to close this case.

An appropriate Order follows.

**Dated: September 25, 2026**

s/ Karoline Mehalchick
**KAROLINE MEHALCHICK**
**United States District Judge**